Peck, J.
The regularity of the judgment below, in favor of the defendant, Gustavus Lane, and the propriety of its reversal, depend mainly upon the legal effect of the negotiation by which the plaintiff in error acquired the property *409 in, and control over, the note upon which the suit is brought; for, if upon the whole record, it is manifest that the plaintiff is not entitled to a recovery against Lane, under the present form of pleading, or any amendment thereof consistent with the facts proved or admitted, the plaintiff' will not be entitled to a new trial, even though some of the positions assumed by the court should, in our opinion, be incorrect. In such case, the plaintiff has not been in law injured by the action of the court; as, in no event, under the law and the facts, would the plaintiff be entitled to a judgment.
In accordance with this acknowledged principle, the case has been argued, mainly, as to the legal effect of the note so far as Lane was concerned, under the circumstances surrounding its negotiation and transfer to the plaintiff in error. And I propose briefly to pursue the same line of inquiry and argument.
What, then, was the legal effect of writing across the note, upon its discount by the plaintiff', the words and figures “ $2,000. This note was discounted for two thousand dollars, which amount is due upon it. July 25, 1851. John H. Ebbert, Cashier?” Did it have the effect of reducing the note from a note for $3,000 to a note for $2,000, as claimed by the defendant in error, or did it still leave the note a promise on the part of the makers, or any of them, to pay the plaintiff in error the sum of $3,000 ?
It is to be borne in mind, as appears from the bill of exceptions, that the note was prepared, so far at least as the defendant Lane is concerned, to obtain from the plaintiff a loan for that sum, for the use and benefit of Seymour & Co.; that Lane was, as the plaintiff well knew, a mere surety; that such being the object and purpose for which it was prepared, it had no legal validity as against any of the makers while it remained in the hands of Seymour & Co., and was not an available security to any one until its delivery to, and negotiation by, the plaintiff, the payee named in it. Douglass & Dunn v. Davenport, 17 Wend. 431.
*410 It was not, as seems to have been supposed when the ease was first tried in the district court, a valid and subsisting obligation, inter partes, for the sum of $3,000 or any other sum, prior to its negotiation to the plaintiff, which was or might be pledged by Seymour & Co. to the bank for $2,000, loaned on its security. It was, I repeat, so far as Lane was concerned, a note prepared to invite and secure a loan for $3,000, to be made by the plaintiff to Seymour & Co., and to become operative when the purpose for which it was drawn should be accomplished.
This purpose never was accomplished; the note never was discounted by the bank as a note for $3,000; the indorsement itself negatives the idea that it ever was received by the bank as a note for $3,000, or that the officers of the bank treated or regarded it at the time as a promise to pay to them, or any one else, the sum of $3,000 in any event. The indorsement is of the same date of the note, (July 25, 185Í,) and says, over the signature of the cashier, “ This note was discounted for two thousand dollars, which amount is due upon it.”
It is apparent, from the circumstances surrounding the making of this note, and its reception by the plaintiff, first, that prior to its reception by the plaintiff^ the note was not an available security to any one, or for any amount; and second, that on its delivery to the plaintiff, if operative at all, as against any of the parties to it, it was only operative as a note for $2,000, the amount for which the plaintiff had discounted it.
Clearly the note never became operative as a promise, on the part of Seymour & Co., and much less of defendant Lane, to pay to the plaintiff the sum of three thousand dollars on its maturity. In the very act of receiving it, the plaintiff says that it was discounted for only $2,000, and that only that amount is due upon it; and as a part of the same transaction, and in the presence of Seymour, who delivered it to plaintiff, the cashier writes this acknowledgment and limitation across the face of the paper *411 itself. The expression, “ which amount is due upon it,” written by the cashier of the plaintiff at the time, has much significance, and clearly evinces that the plaintiff understood that, in legal effect, it was at that time a note for $2,000, and no more — “which amount is due upon it” —not whieh amount is due to us, and the residue to some other person. The plaintiff knew it was valueless in Seymour’s hands; that no portion of it had ever been paid, and specify its value when delivered to them. And the act of the notary in New York, when about to demand, and, if need be, protest for non-payment, in erasing the figures $8,000 in the left hand margin, and writing thereunder, in pencil, the figures $2,000, was in strict accordance with the legal effect of the instrument, and also indicates the construction put upon such instruments by the commercial world.
It was discounted for $2,000, that is, it was discounted as a note for $2,000, deducting the interest. This is also apparent from the figures $31.00, Oct. 25, 1851, noted at the bottom of the note, that being the interest for that period on the sum for which it was discounted.
"When was the $2,000 due or to become due on the note? Clearly at the maturity of the note, for the plaintiff had deducted the interest on the loan to its maturity.
If, therefore, the note was ever operative as a promise to pay to the plaintiff any sum, it’ was never anything more than a promise to pay them the sum of two thousand dollars at the time and place specified in the note for payment. Douglass & Dunn v. Wilkinson, 17 Wend. Rep. 481.
The last case cited from Wendall, was one in which a note had been drawn by Norton, to be discounted for the benefit of Norton, Goodman & Co., and payable to Wilkinson, who was to indorse the same for the accommodation of Norton, Goodman & Co.; the note was drawn for $2,500 at ninety days. Wilkinson declining to become liable for the whole sum named, indorsed the note as follows : “ Mr. Olcott, pay on the within seven hundred and *412 fifty dollars. S. Wilkinson.” And re-delivered the note to Norton. The amended declaration described tbe note as having been made for seven hundred and fifty dollars. Bronson, L, in commenting upon the note and its agreement with the declaration, uses this language: “This never was a valid note for anything more than $750, although drawn for a larger amount; the defendant refused to indorse it for anything beyond that sum. It was accommodation paper, and of no value whatever until negotiated by the bank. In legal effect, this was, I think, a note for $750, and no more; and as such, was a valid security to the bank, and one which could be enforced against the makers and all the other parties, as though originally drawn for that sum.”
So, in the case under consideration, the note being an accommodation note, and in the hands of the party for whose benefit it had been drawn, had no legal validity, as a note for any amount, until it had been delivered to, and discounted by, the plaintiff'. It was discounted as a $2,000 note, the plaintiff declining to discount it at its face, or for any larger sum.
The negotiation imparted to the note its legal vitality, and it then, by the united act of the principals, Seymour & Co. and the plaintiff, received the impress of a note for $2,000; and was, in legal effect, so far as they were concerned, a note for that amount, and no more.
In the case cited from 17 Wend, supra, the surety himself was a party to the reduction, and was, therefore, a party to the note in its altered form, and bound by its terms as altered. But in the case at bar, the defendant Lane, was no party to the reduction, never assented to the change wrought in the character and legal effect of the note, and is not, therefore, bound to pay it as a note for $2,000; while the plaintiff, by its own voluntary act, is now precluded from treating or regarding the note thus tampered with, as a note for anything more. In short, as a contract to pay the plaintiff the sum of $3,000, ninety *413 days after the date thereof, the note sued on never had any legal existence and vitality; it became, on its negotiation, in substance and legal effect, a promise to pay to the plaintiff, or order, the sum of two thousand dollars, and no more.To this contract, the defendant Lane never, in terms, assented, and no agreement or assent on his part can, under the law, be implied.
The counsel for the plaintiff in error now assume that the note was a valid note of all the makers for $3,000, when delivered to the bank to be discounted, and have declared upon it as such; and that the bank, having advanced upon its security a sum less than its face, is entitled to recover from the surety, Glustavus Lane, the amount thus advanced, as it falls within the terms of his guaranty, as defined and limited by the accommodation note signed by him. It is claimed that he has no legal nor moral right to complain, inasmuch as the recovery asked falls far below the sum stipulated in the note which he was content to guaranty, and the arrangement between the principals and the plaintiff did not vary the parties to the contract nor enlarge its obligation, either as to the time or the manner of performance; and that the rule, that a surety can only be made liable by the terms, that is, the very letter of his contract, and that any alteration of the terms between the principal and creditor, without the consent of the surety, will avoid the obligation as to him, must, under the authorities, be restricted in its application to cases where the alteration either operates to change or alter the parties to the contract, or the time, place or manner of performance, or in some degree enlarges or increases the liability or amount to be paid by the surety, and has no application to a case like the present, where no change or alteration whatever is made, except to relieve the surety from the payment of a portion of the amount he, by the contract, had voluntarily assumed.
Admitting the'premises assumed by the plaintiff’s counsel to be true — that the note, in its original form, ever had *414 any legal vitality or binding obligation as to Lane — the positions of the plaintiff’s counsel, as to the true construction of the surety’s engagement and his liabilities, would be difficult to answer, and might require us to pause before holding the surety discharged by such a modification of his liability, under the strict rule before referred to. But, as we have already seen, the contract, in its original form, never had any legal validity, as against Lane, and it therefore is not necessary for us to determine what would have been the effect of such a modification of a subsisting and valid agreement. It is enough to say, that the original note — being, so far as Lane is concerned, nothing more than a proposition for a loan, by the plaintiff, to Seymour & Co. of the sum of $3,000, neither more nor less — was never accepted by the plaintiff, nor any modification of that proposition ever assented to by Lane, the paper never had, as against him, any legal vitality; and to hold him liable thereon for any amount, or for the money actually loaned by the plaintiff, would be to create a liability of a surety, by mere implication, which all the authorities forbid.
The conclusion, then, to which we have arrived — that, under the circumstances surrounding the making, negotiation, and delivery of the note in suit, no right of action exists in favor of the plaintiff against the defendant Lane upon the note, or for the money loaned — renders it unnecessary for us to examine into the nature and effect of the charge delivered to the jury, by the judge presiding at the last trial in the district court; for even if that charge was erroneous, and found to be so, we could not reverse the judgment, because such reversal, under the law, as applied to the facts proved or admitted, could not result beneficially to the plaintiff.
The judge, in his charge, after alluding to the manner in which, and the purpose for which, the note in suit had been prepared, submits to the jury the question, whether the note was altered by the plaintiff and Seymour, without *415 the assent of Lane, by the writing appearing on the face of the note, and instructs them that, if it was so made, it amounted to a material alteration, and would exonerate tbe defendant Lane.
We entertain a decided opinion, that, by tbe facts alluded to by tbe judge, in bis charge, the note was changed from a note for $3,000 to a note for only $2,000, and that Lane is not hable on it as a note for $3,000, because it never was, in legal effect, a valid note for that amount; and that he is not liable on it as a note for $2,000, because he never assented to the making of such a note. We do not, then, pronounce the note sued on void as to Lane, because it had been altered, but because the note executed by him never had any legal validity.
The other errors assigned, that the verdict is contrary to the evidence, etc., have not been argued by the counsel, nor our attention called to the points wherein any further errors are said to exist; and entertaining, as we do, the decided opinion that, upon the whole record, the plaintiff is not entitled to any recovery against the defendant Lane, we hereby order and direct that the judgment of the district court be and the same is hereby affirmed, with costs.
Sayan, C. J., and Brinkerhoee, Scott and Suture, JJ., concurred.